

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00089-CV

_____


IN THE MATTER OF THE MARRIAGE OF
KANDY HILL HALLMAN AND
CHARLES DAVID HALLMAN

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2008-428


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

## I.       Introduction

Kandy Hill Hallman and Charles David Hallman entered into a Rule 11 agreement on August 26, 2008, after Kandy filed a petition for divorce the preceding month. Because certain contested matters remained unresolved, a divorce hearing took place on August 14, 2009, and a final decree of divorce was signed and entered on September 16, 2009.

David appeals the final decree of divorce and contends the trial court erred by (1) failing to enforce the Rule 11 agreement only on the specific terms stated therein; and (2) including terms and conditions in its final judgment not present in the Rule 11 agreement, after Kandy revoked consent and refused to enter an agreed final decree of divorce.

We affirm the judgment of the trial court because (1) the Rule 11 agreement was not modified and was a valid and binding contract; and (2) the trial court had sufficient evidence upon which to exercise its discretion in entering judgment on arrearages in temporary support, in allocating the parties' debt, and in awarding spousal maintenance. The court did not err in its application of that discretion.

## II.      Factual and Procedural Background

On July 15, 2008, Kandy filed for divorce from David. After having discussed matters between themselves, Kandy and David reached an agreement on property division and temporary

support.[1]  Kandy's attorney drafted a Rule 11 agreement which embodied the parties' oral agreement.  The agreement was signed and filed among the papers of record.[2]  Later, after additional negotiations, Kandy and David signed an agreed final decree of divorce to be submitted for approval upon obtaining the divorce.[3]  At the time he signed the proposed final decree, David was working as an oil field consultant and was earning in excess of $100,000.00 per year.  When David lost his job, he notified Kandy of that fact and that as a result, he would not be able to fulfill the obligations set forth in the proposed final decree of divorce.  Consequently, the agreed final decree was never submitted to the court.  Instead, a final contested hearing was scheduled.

At the hearing, Kandy testified that she wanted the terms of the Rule 11 agreement enforced.  The agreement divided the parties' real and personal property and provided for temporary support for Kandy in the amount of $4,000.00 per month from August 1, 2008, and the first day of each month thereafter until entry of the final decree.  At the time of the hearing, Kandy had received only $15,100.00 in temporary support payments.

There is no indication in the record that either party revoked the Rule 11 agreement. David testified that he could not fulfill the terms as set out in the proposed final decree and that he was currently working in Louisiana making approximately one-seventh the amount of money he

---

[1]Kandy and David have no children.

[2]David was not represented by counsel, but met with Kandy and her attorney and signed the agreement.

[3]The Rule 11 agreement provided that David was entitled to the exclusive use of the marital residence pending eventual agreed sale of the residence with proceeds to be divided equally between David and Kandy.  After signing the agreement, Kandy and David signed the proposed decree that David could buy Kandy's interest in the marital residence for a $15,000.00 down payment on a home for Kandy with additional payments of $2,500.00 each month until the residence was paid in full.

made at the time he signed that document. Kandy testified that she did not pursue the proposed agreed decree because David represented that he could not fulfill its terms.

During the course of the marriage, David did not file any income tax returns and as a result, the community owed a debt of back taxes to the IRS of $123,000.00.[4] Kandy was unaware of the amount of the debt, and presumably was not aware of it at the time she entered into the Rule 11 agreement. Provision for the payment of this debt was not included in the Rule 11 agreement. The issue of spousal maintenance was likewise not addressed in the agreement.

After a contested hearing,[5] the trial court enforced the Rule 11 agreement as a contract and incorporated the agreement into the final decree of divorce.[6] The final decree also (1) awarded judgment against David for an arrearage of temporary spousal support in the amount of $36,900.00; (2) awarded judgment against David for spousal maintenance in the amount of $36,000.00, to be paid at a rate of $1,000.00 per month; and (3) ordered Kandy to pay twenty percent and David to pay eighty percent of the IRS debt.

---

[4]Kandy testified that she filed separate income tax returns accounting for the small amount of income she earned during the marriage. David's alleged failure to file an income tax return during the marriage was a point of contention, as David became angry when Kandy tried to speak with him about it. Kandy was not aware of the amount of the IRS debt, and did not have sufficient information to file an income tax return for David's income.

[5]While David was not represented by counsel when he signed the Rule 11 agreement or the agreed final decree of divorce, David was represented by counsel at the divorce hearing.

[6]The final decree divided the parties' real and personal property in accordance with the Rule 11 agreement.

### III.  Enforcement of the Rule 11 Agreement

In his first appellate point, David contends the trial court erred as a matter of law in failing to enforce the Rule 11 agreement only on the specific terms stated in the agreement.   The law of contracts applies to Rule 11 agreements.   *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 246 (Tex. App.—Texarkana 2005, no pet.).   The decision of the trial court to enforce a Rule 11 agreement as a contract is subject to the abuse of discretion standard of review.   *See Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied).   A trial judge has no discretion in determining what the law is or in applying the law to the facts.   *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Brown v. Vann*, 167 S.W.3d 627, 630 (Tex. App.—Dallas 2005, no pet.).   A failure to analyze or apply the law correctly will constitute an abuse of discretion.   *Brown*, 167 S.W.3d at 630.

David initially takes the position that the Rule 11 agreement is valid as the facts show the parties intended to enter into a binding contract.   He claims, however, that the trial court exceeded the terms of the Rule 11 agreement by finding an enforceable final settlement agreement while making additional awards to Kandy.   David contends that in so doing, the trial court entered a judgment which was manifestly wrong and unjust.

We first determine whether the trial court abused its discretion in determining the existence of a valid Rule 11 agreement, enforceable as a contract.

5

Rule 11 of the Texas Rules of Civil Procedure provides as follows:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

TEX. R. CIV. P. 11.

A settlement agreement must comply with Rule 11 to be enforceable. *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 769 (Tex. 2007). A settlement agreement satisfies the requirements of Rule 11 if it is (1) in writing, (2) signed, and (3) filed with the court or entered in open court prior to a party seeking enforcement. *Padilla*, 907 S.W.2d at 461.

In the present case, the record contains a written agreement styled "Rule 11 Agreement," signed by Kandy and David, which was filed with the court on August 29, 2008. The existence of the Rule 11 agreement is not contested, and there is no indication in the record that the agreement was modified or revoked.[7] We find no abuse of discretion on the part of the trial court in concluding Kandy and David entered into a valid and binding Rule 11 agreement, enforceable as a contract.

Next, we determine whether the trial court abused its discretion by including provisions in the final decree of divorce which were not included in the Rule 11 agreement.

---

[7]Kandy testified that she wanted the agreement enforced.

6

## IV.     Variance in Agreement and Decree

David couches his argument on this issue in terms of sufficiency of the evidence.   This is a nonjury trial in which there was no request for findings of fact and conclusions of law, and none were filed.   A complete reporter's record has been provided.

In considering the appropriate standard of review, we must presume the trial court found all fact questions in support of its judgment and must affirm that judgment on any legal theory supported by the pleadings and the evidence.  *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).   When a reporter's record has been provided, the implied findings may be challenged for legal and factual insufficiency "the same as jury findings or a trial court's findings of fact."  *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Johnson v. Oliver*, 250 S.W.3d 182, 186 (Tex. App.—Dallas 2008, no pet.).   When making a legal sufficiency determination, we consider only the evidence most favorable to the implied findings of fact and disregard all contradictory evidence.  *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980) (per curiam); *Advanced Messaging Wireless, Inc. v. Campus Design, Inc*., 190 S.W.3d 66, 69 (Tex. App.—Amarillo 2005, no pet.).   In considering the factual sufficiency of the evidence to support the implied findings, we consider all the evidence, including any evidence contrary to the court's judgment.  *Advanced Messaging Wireless*, 190 S.W.3d at 69.

A trial court's division of the marital estate is reviewed under an abuse of discretion standard.  *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.).   A trial

court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. *See* TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). A trial court's division of property may therefore not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Boyd*, 131 S.W.3d at 610. Under this abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are merely relevant factors in assessing whether the trial court abused its discretion. *In re Marriage of Driver*, 895 S.W.2d 875, 877 (Tex. App.—Texarkana 1995, no writ). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we first determine whether the trial court had sufficient evidence upon which to exercise its discretion, and then determine whether the trial court erred in the application of that discretion. *Boyd*, 131 S.W.3d at 611. The applicable sufficiency review comes into play with regard to the first question. *Id.*

In this case, the trial court ordered that the Rule 11 agreement was enforceable as a contract and incorporated the terms of that agreement into the decree of divorce, and was permitted to so order. *Clanin v. Clanin*, 918 S.W.2d 673, 677 (Tex. App.—Fort Worth 1996, no pet.) (court may divide community estate by incorporating parties' property settlement agreement in decree).

At issue here is the addition of the following orders in the final decree: (1) the payment by David of an arrearage of temporary spousal support in the amount of $36,900.00; (2) the payment

by David of eighty percent of the estimated community IRS tax debt in the amount of $123,000.00, and the payment by Kandy of twenty percent of said debt;[8] and (3) the payment by David of spousal support in the amount of $36,000.00 at the rate of $1,000.00 per month.

### A.    *Judgment for Arrearage*

Pursuant to the terms of the Rule 11 agreement, David was to pay Kandy $4,000.00 per month as temporary support, until a final decree of divorce was entered.   The Rule 11 agreement was signed and filed in August 2008, and the final decree of divorce was entered in August 2009. Kandy's uncontested testimony established that temporary support payments of $52,000.00 should have been paid through August 2009.   Kandy's uncontested testimony further established that only $15,100.00 in temporary support payments were made through that date, leaving an arrearage of $36,900.00.   The trial court had sufficient evidence upon which to render judgment for the arrearage of temporary support, and did not abuse its discretion in doing so.

### B.    *The IRS Debt*

The Rule 11 agreement made neither mention of, nor provision for, the payment of the $123,000.00 community debt to the IRS.   The court set forth the Rule 11 agreement, to the extent as made, in the decree.   Because the agreement did not address the issue of the IRS debt, the court was free to address that issue in the decree.   *See id.* at 677–78.

---

[8]David fails to delineate the portions of the final decree of divorce he finds to be objectionable; rather, he contends that the decree should have included only the specific terms stated in the Rule 11 agreement. Accordingly, we review those portions of the decree not included in the Rule 11 agreement to determine whether there was an abuse of discretion in the inclusion of these additional provisions.

David relies on *Ames v. Ames*, 860 S.W.2d 590 (Tex. App.—Amarillo 1993, no writ), in support of his contention that the final decree should contain only those specific provisions set forth in the Rule 11 agreement. Certain provisions of the Ames' divorce decree expanded upon provisions of the settlement agreement, while some provisions of the agreement were missing from the decree. The court determined that in a judgment by consent, "the court has no power to supply terms, provisions, or essential details not previously agreed to by the parties." *Id.* at 593 (citing *Matthews v. Looney*, 132 Tex. 313, 317, 123 S.W.2d 871, 872 (1939)).

*Ames* is distinguished from the present case because it involved a mediated settlement agreement reached pursuant to alternative dispute resolution procedures described in Chapter 154 of the Texas Civil Practice and Remedies Code.[9] Further, the judgment rendered in *Ames* was a consent judgment. "In order for a consent judgment to be valid, the parties must have definitely agreed to all the terms of the agreement. Nothing should be left for the court to provide." *Id.* (citing *Vineyard v. Wilson*, 597 S.W.2d 21, 23 (Tex. App.—Dallas 1980, no writ)). We further recognize that a trial court has no authority to enter a judgment that varies the terms of a mediated settlement agreement under the Texas Family Code. *In re Marriage of Joyner*, 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied) (agreement formed under Sections 6.062 and 153.0071 of Texas Family Code binds parties to agreement and judgment should be entered on agreement).

---

[9]*See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 154.001–.073 (Vernon 2005 & Supp. 2009).

In the present case, however, the final decree of divorce was neither a consent judgment as in *Ames* and *Looney*, nor was it a mediated settlement agreement under the Texas Civil Practice and Remedies Code or the Texas Family Code. The authority upon which David relies for the proposition that the trial court erred as a matter of law in making additional awards to Kandy is not on point.

This case involves a valid, albeit noncomprehensive, Rule 11 agreement. In a contested hearing, the court heard testimony regarding items not addressed in the agreement, including the community IRS liability, the arrearage on temporary support, and the facts underlying the request for spousal maintenance. While Kandy and David resolved the majority of the property division issues prior to the hearing, the issues upon which the court heard testimony were in dispute. If a Rule 11 agreement fails to dispose of all issues, a trial court must nevertheless dispose of all issues properly before it. *See Clanin*, 918 S.W.2d at 677–78. Rule 11 agreements are used to resolve various procedural or substantive matters many times without attempting to dispose of the entire case. *See Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (extending deadline for filing of initial responsive pleading).

At trial, the court considered evidence relating to the marital assets and debts. The court also considered evidence that while Kandy encouraged David to file income tax returns during the marriage, he refused to do so. The testimony showed that while Kandy filed individual income tax returns during her brief and sporadic periods of employment, she was not privy to all

information necessary to file income tax returns for David's income. This was a point of contention during the marriage.

The court also considered evidence of both David's and Kandy's employment situations and potential earnings. While David was gainfully employed and possessed solid earning potential, Kandy was not employed and did not work outside the home during most of the ten-year marriage. The court's division of the community IRS debt was based upon sufficient evidence, and the division is not manifestly unfair and unjust. The trial court did not abuse its discretion in the division of this debt.

### C. *Spousal Maintenance*

While the Rule 11 agreement contained specific provisions for the payment of temporary maintenance, it neither mentioned, nor did it address, the issue of spousal maintenance. For the reasons stated above, the trial court was obliged to address this issue in the final decree of divorce.[10]

An award of spousal maintenance is intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.). A trial court may order maintenance if the duration of the marriage was ten years or longer, the spouse seeking

---

[10]Kandy's original petition for divorce and first amended original petition for divorce both seek an award of spousal maintenance in accordance with Chapter 8 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 8.051 (Vernon 2006).

maintenance lacks sufficient property to provide for his or her minimum reasonable needs, and cannot support himself or herself due to (1) an incapacitating physical or mental disability, (2) a child in the home with a disability requiring substantial care and supervision, or (3) the lack of adequate earning ability.  TEX. FAM. CODE ANN. § 8.051.

Determining the spouse's minimum reasonable needs is a fact-specific determination done on a case-by-case basis.  *Deltuva*, 113 S.W.2d at 888 (citing *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.)).  A trial court's award of spousal maintenance is subject to an abuse of discretion review.  *Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort Worth 2008, pet. denied) (citing *Chafino v. Chafino*, 228 S.W.3d 467, 474 (Tex. App.—El Paso 2007, no pet.)).  The trial court may exercise its discretion to award spousal maintenance if the party seeking maintenance meets those eligibility requirements set forth in the statute.  *Id.*

The evidence is undisputed that Kandy and David were married for the requisite ten years. Kandy testified that while married to David, she was involved in a severe four-wheeler accident in which her elbow was shattered.  While surgery was performed on Kandy's elbow, additional surgery is required.   The second surgery has not been scheduled because Kandy does not have the money to pay for it.  Undisputed evidence indicates that not only is the elbow injury painful, it limits Kandy's ability to seek gainful employment in an area where she has experience.   Also undisputed is Kandy's testimony that she worked very little during the marriage.   At the time of

13

the hearing, David was gainfully employed, earning approximately $4,000.00 per month. Prior to that, David worked as an oil field consultant making between $100,000.00 and $124,000.00 per year.

The foregoing undisputed evidence establishes that Kandy had little work experience, while David provided for the majority of the couple's support during the marriage, and remained gainfully employed at the time of the hearing. Further, Kandy was unable to seek gainful employment due to her physical impairment. This evidence is sufficient to permit the award of spousal maintenance. The trial court did not abuse its discretion in rendering judgment for spousal maintenance in the amount of $36,000.00, to be paid at a rate of $1,000.00 per month for a period of thirty-six months.

## V. Revocation of the Rule 11 Agreement

In his second point of error, David contends that the trial court erred in adding new terms and conditions to the Rule 11 agreement after Kandy revoked that agreement. We find no merit in this contention. David contends that "either we have a Final Judgment based on the Rule 11 Agreement or we do not. But, clearly it is reversible error to hold the Rule 11 Agreement as a Final Judgment to the parties AND adjudge additional money judgments against the Appellant." He contends the Rule 11 agreement was either revoked by the unfiled proposed agreed divorce decree in which case the Rule 11 agreement should not be considered or the divorce terms must have been strictly in accordance with the Rule 11 agreement. The proposed divorce decree signed

14

by the parties was never filed with the court and it cannot be considered a revocation of the Rule 11 agreement. Further, the proposed divorce decree purported to present an agreed or consent judgment to the court which can be revoked by either party before the judgment is entered. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). Kandy and David each testified that when David lost his job and was temporarily unemployed, David indicated his inability to abide by the terms of the agreed final decree; hence, the divorce was not pursued on that basis, it was not submitted to the court and Kandy withdrew her consent. While the evidence suggests there was a discussion of modifying the Rule 11 agreement, such modification was not accomplished.[11]

We have previously explained that the trial court was not only authorized to divide the remaining estate, but in fact was obligated to do so. TEX. FAM. CODE ANN. § 7.001 (court shall order division of estate of parties in a manner that court deems just and right). We disagree that the only choice of the trial court was to either enforce the Rule 11 agreement without addressing the other marital issues or to declare the Rule 11 agreement invalid. Here, the trial court honored the Rule 11 agreement as to all matters it covered.

---

[11]Rule 11 of the Texas Rules of Civil Procedure requires that in order to enforce an agreement made pursuant to the rule, the agreement must be in writing, signed and filed with the papers as part of the record, unless made in open court and entered of record. TEX. R. CIV. P. 11. To be enforced, a modification of a binding Rule 11 agreement must also meet these criteria. The agreed final decree of divorce was not filed with the papers as part of the record and was not made in open court and entered of record. The decree was never presented to the trial court and therefore never acted on or approved by the trial court.

David relies on the case of *Samples Exterminators v. Samples*, 640 S.W.2d 873 (Tex. 1982) (per curiam), in support of his contention that the trial court erred as a matter of law by enforcing the Rule 11 agreement. *Samples* recognizes that when a party revokes his or her consent to settle a case prior to entry of a consent judgment, a consent judgment entered in the face of such revocation is void. *Id.* at 874–75; *see also Giles v. Giles*, 830 S.W.2d 232, 235 (Tex. App.—Fort Worth 1992, no writ) (consent judgment cannot be rendered when one party does not consent at time judgment actually rendered although that party previously may have consented to agreement). These cases do not support David's contention.

Here, there was no revocation of the Rule 11 agreement, and a consent judgment was not entered. The trial court entered judgment after a contested hearing on issues not addressed in the Rule 11 agreement. The Rule 11 agreement was set forth at length in the final decree. Additional provisions in the decree were not addressed in the Rule 11 agreement, and were supported by the evidence.

Accordingly, we affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:     February 9, 2010
Date Decided:       February 23, 2010

16