**Opinion filed July 31, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00192-CV
_____

## LINDA MARIA TURNER, Appellant

## V.

## LEWIS ALLEN TURNER, Appellee

**On Appeal from the 87th District Court**

**Leon County, Texas**

**Trial Court Cause No. D-07-151**

### M E M O R A N D U M   O P I N I O N

The issues in this appeal involve the trial court's division of property upon divorce, the appropriateness of the trial court's execution of the decree of divorce, and the amount and duration of the award of spousal maintenance. We find no error in connection with any of those issues other than the issue of the duration of the award of spousal support. We modify the judgment of the trial court to show that the spousal maintenance is limited to a term of three years. Otherwise, we affirm the judgment of the trial court.

Linda Maria Turner and Lewis Allen Turner were married on January 1, 1961. On March 16, 2007, Lewis filed a petition for divorce against Linda. According to Lewis's testimony, Linda and Lewis had been separated "[r]oughly eighteen years" at the time of the hearing in this case, but actually had ceased to live together as husband and wife "[a]bout six years" prior to the hearing. That happened on December 10, 2003, when Linda shot Lewis. He was involved with another woman. Criminal charges for aggravated assault with a deadly weapon were filed against Linda, but a jury acquitted her of that charge. Lewis also testified that Linda had awakened him one night by hitting him in the head with an electric screwdriver and choking him with a silver necklace.

Lewis began seeing the other woman in early 2003. Linda had one child, Nathanial Edward Mendez. Nathaniel was not Lewis's son, but Lewis raised him as his own. Lewis and Linda had one child together, Sammie, a daughter; Sammie was forty-five at the time of the trial of this case. On July 8, 2003, Lewis and Linda, in an effort to protect their property for their children, executed a "Partition and Exchange Agreement." The agreement was also entered so that Lewis and Linda could both work the farms and a tire business that they had started some years earlier in Splendora. In order to effectuate the agreement, Lewis claims that he executed deeds of certain real property to Sammie and certain real property to Nathaniel, but asserts that the deeds should have contained a reservation of a life estate in his favor. Instead, the deeds provided that the property was not to be sold during his lifetime. Correction deeds were prepared to include the life estate reservation. Sammie approved the correction deed, but Nathaniel did not.

After Linda shot him, Lewis filed a lawsuit against her in Montgomery County. In that lawsuit, Lewis sought to rescind the agreement, to recover damages for Linda's breach of the agreement, and to recover damages for infliction of bodily injury and intentional infliction of emotional distress. The trial court granted all the relief that Lewis requested. On appeal, the Beaumont Court of Appeals, among other things, held that, under these circumstances, Lewis could not recover damages for breach of the agreement and also obtain a judgment for rescission. *Turner v. Turner*, No. 09-06-00570-CV, 2008 WL 2522083, at \*4 (Tex. App.—Beaumont June 26, 2008, pet. denied) (mem. op.). The appellate court modified the trial court's judgment to delete the award of rescission. *Id.*

In her first point of error, Linda asserts that the trial court erred when it granted an unequal division of the property. She asserts in her second point of error that the trial court erred "when it awarded real property to Lewis Allen Turner after he had executed the Partition and Exchange Agreement, along with deeds, having the undivided interest of Lewis Allen Turner conveyed to the children." In her third point of error, Linda claims that the trial court erred when it set aside the Partition and Exchange Agreement. Linda, in her fourth point of error, maintains that the trial court erred and abused its discretion when it awarded Linda's separate property to Lewis. Linda takes the position that Lewis is, in effect, attempting to relitigate the issue of rescission. She claims that the final outcome in the Montgomery County lawsuit prevents further litigation relative to the agreement in this case under the doctrine of res judicata. The trial court disagreed and found, in this case, that the agreement did not address the character of the property, nor did it address all the property. It further found that the agreement was vague, ambiguous, and unenforceable as to the character of the property. The trial court also held that the agreement did not set out the methods by which the respective interests might be determined. The trial court went on to find that there had never been an adjudication of the "legality nor for ambiguity, nor for characterization, nor for disposition of the property." Therefore, found the trial court, the Montgomery County case was not res judicata of the issues in this case.

Laying aside any issues involving rights of persons not a party to a determination of issues involving the agreement, even if we were to agree with Linda's position, we do not believe that we reach that issue. As Lewis points out in his brief, Leon County Local Rule 4.8A, approved by the Texas Supreme Court on February 22, 2006, provides that the parties are to file proposed property division statements in domestic relations cases related to divorce. 12th, 87th, & 278th (Tex.) Dist. Ct. Loc. R. 4.8A (Leon County) (approved in Misc. Docket No. 06-9036; available at http://www.supreme.courts.state.tx.us/miscdocket/06/06903600.pdf). Leon County Local Rule 4.8D, approved by the supreme court at the same time, provides that, if a party fails to file the proposed statement, the court may adopt "as stipulated the information filed by the complying party. The non-complying party will be prohibited from contesting the accuracy of the information presented by the complying party." *Id.* Rule 4.8D.

Lewis filed his proposed property division statement on February 16, 2010, and a final one on March 1, 2010. Linda neither filed a statement of her own nor did she object to the proposed property division statement that Lewis filed. The trial court refers to these provisions

in its findings of fact and conclusions of law. Lewis's proposed division contained property divisions, descriptions, and values. Under the proposal, Linda was to receive a net interest in community property awarded to her of $473,840.94, or 48.07% of the net community estate. Lewis was to receive a net interest in community property awarded to him of $512,375.95, or 51.93% of the net community estate. Therefore, under the proposed division, Lewis received $38,535.01, or approximately 3.86%, more in net community value than did Linda. He also received the separate property judgment he had against Linda for injuries he suffered when she shot him.

Because Linda did not file a proposed property division statement as required by Leon County local rules, she is prohibited from contesting the accuracy of the proposed property division statement that Lewis filed as required. The trial court did not err when it entered a property division in accordance with Lewis's proposed property division statement unless the division was not equitable.

In a divorce, a trial court need not divide the parties' property equally, but it must do so equitably. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex. App.—El Paso 2007, no pet.). There are a variety of factors that a trial court may consider when it makes an unequal property division. Those factors include: the spouses' capabilities and abilities; benefits that the party not at fault would have received as a result of the continuation of the marriage; business opportunities; relative physical conditions; age disparity; size of separate estates; the nature of the property; and disparity of earning capacity. *Id*. In a fault-based divorce, the trial court may also consider the conduct of the one who is at fault. *Id*.

We will not correct a property division unless the trial court clearly abused its discretion. *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *In re Marriage of Taylor*, 992 S.W.2d 616, 620 (Tex. App.—Texarkana 1999, no pet.). We examine the issue by asking whether the trial court had sufficient information upon which it could exercise its discretion and whether the trial court abused its discretion by making a division of the property that was manifestly unjust or unfair. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Legal and factual sufficiency issues are not independent grounds of error but, rather, are relevant factors to consider when we determine whether a trial court has abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.).

4

In our review, we presume that the trial court properly exercised its discretion when it divided the property. *Chafino*, 228 S.W.3d at 472. The party challenging the property division carries the burden of demonstrating that the division was so unjust and unfair as to constitute an abuse of discretion. *Id.* at 472–73.

The trial court found that both parties were at fault in bringing about the divorce. The evidence shows that, at the time of the trial of this case, Lewis was sixty-six years old and Linda was sixty-four years old. Lewis continued to suffer from the injuries he received when Linda shot him. He testified that his physical condition has been impaired and his ability to work has been compromised and limited; he cannot work an eight- to ten-hour day, and there is not much hope for recovery. The bullet with which Linda shot Lewis has not been removed from his body. Lewis is on Medicare and receives $806 per month in social security benefits. He also receives some money from hay sales.

Linda's son, Nathaniel, runs the tire business that she and Lewis originally started and owned. She testified that she does her son's accounting and runs business errands for him. He does not pay her a regular salary, but he pays her bills in whatever amount she needs in any particular month. She owns the real property upon which the tire store is situated. The trial court awarded Linda real property that she can use to continue farming operations. She was to begin receiving approximately $900 per month social security when she reached sixty-five years of age.

The trial court found that Linda's conduct in shooting Lewis was egregious and shocked its sensibilities. When we weigh all of the factors that we have outlined above, we hold that, as a whole, they weigh in favor of the trial court's unequal division of the property. Linda has not met her burden on appeal to overcome the presumption that the trial court properly exercised its discretion when it divided the property. *Chafino*, 228 S.W.3d at 472. It was Linda's burden to demonstrate that the division was so unjust and unfair as to constitute an abuse of discretion, and she did not meet that burden. *Id.* at 472–73. Points of Error Nos. One, Two, and Four are overruled, and we do not reach Point of Error No. Three.

The trial court pronounced its judgment at the conclusion of the hearing, but told the parties that the written decree would be entered on April 23, 2010. Instead, the decree was entered by a visiting judge on April 16, 2010. In Linda's brief, her attorney argues that the decree was entered without notice to him and that he had no opportunity to object to the visiting

5

judge. That is the subject of Linda's fifth point of error, and it is predicated upon Section 74.053 of the Texas Government Code. TEX. GOV'T CODE ANN. § 74.053 (West 2005). Section 74.053 governs the procedure for objecting to an assigned judge and provides that "the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case *that is to be heard* in whole or part by the assigned judge." Section 74.053(a)(2) (emphasis added). Here, the case had already been heard and decided by the presiding judge. The case was not to be heard by the visiting judge. The visiting judge only performed the ministerial act of entering the judgment previously pronounced by the presiding judge. *See Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969) ("[T]he entry of a trial judgment is only a ministerial act."). Therefore, the presiding judge was not required to send notice of the assignment as the assigned judge was not to hear any portion of the case. We overrule Linda's fifth point of error.

In her sixth and final point of error, Linda does not argue that the trial court erred when it ordered spousal support but, rather, argues that the trial court orally pronounced judgment that Linda was to pay Lewis $100 per month as spousal support, not $200 as stated in the written decree. Further, she argues that the support should be limited, under this record, to a period of three years. At the conclusion of the trial, the court pronounced judgment and ordered Linda to pay Lewis $100 a month in spousal support. However, the trial court made a docket entry that Linda was to pay $200 a month in spousal support and also entered a conclusion of law that Linda was to pay $200 a month. Therefore, the amount Linda was ordered to pay in the written decree does conform to the presiding judge's findings of fact and conclusions of law, as well as the docket entry the presiding judge made at trial. It was within the trial court's plenary power to award $200 per month despite its oral pronouncement of $100 per month. *See Mathes v. Kelton*, 569 S.W.2d 876, 877–78 (Tex. 1978); *Cook v. Cook*, 888 S.W.2d 130, 131 (Tex. App.—Corpus Christi 1994, no writ).

The trial court did not, however, orally pronounce that the payments be made for a specific time period. Nor did the trial court make a docket entry or enter a finding of fact or a conclusion of law relating to the duration of the payments or the earning capacity of Lewis. The version of Section 8.054 of the Texas Family Code that was in effect at the time of this divorce proceeding provided that a court "may not order maintenance that remains in effect for more than three years after the date of the order" unless the "spouse seeking maintenance is unable to

support himself or herself through appropriate employment because the spouse has an incapacitating physical or mental disability." Former TEX. FAM. CODE § 8.054(a)(1), (b) (2005). If the spouse has an incapacitating disability, the trial court "may order maintenance for as long as the disability continues." *Id.* § 8.054(b). The trial court did not order for the support to continue as long as the disability continued. In addition, the trial court made no pronouncement that Lewis had an incapacitating disability, nor did the trial court enter a finding of fact or conclusion of law that Lewis had an incapacitating disability. Because the trial court did not specify a term longer than generally permitted by the Family Code in its oral pronouncement, findings of fact, or conclusions of law; because Linda requested an additional finding of fact regarding Lewis's earning ability; and because the award of spousal maintenance beyond the three-year period is not supported by the record, we hold that the written decree should have provided that the award of spousal support was limited to a period of three years. *See* TEX. R. Civ. P. 299 (omitted findings). The sixth point of error is overruled in part and sustained in part.

We modify the judgment of the trial court to show that the spousal support that Linda is to pay to Lewis is limited to a term of three years. As modified, the judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


July 31, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.