### In the Matter of the MARRIAGE OF Katherine Susan GILL and Todd Damon Gill.

### No. 10–00–163–CV.

Court of Appeals of Texas, Waco.

March 7, 2001.

James R. Dunnam, Dunnam & Dunnam, L.L.P., Waco, for appellant.

Ben Selman, Keith Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Katherine Susan Gill appeals from a Final Decree of Divorce from her husband, Todd Damon Gill. Katherine contends, among other things, that the evidence is factually insufficient to support the court's $23,500 valuation of the community's claim for equitable reimbursement in her separate-property house. We agree. We will reverse the judgment as to the property

division and remand for a new hearing on property issues.

## BACKGROUND

The Gills were married in November of 1994. During their marriage, Katherine received a house as a gift from her parents. It is undisputed that the house is Katherine's separate property. In February of 1998, the Gills borrowed $40,000 from Community State Bank, using the house as collateral. The Gills deposited the $40,000 in a joint checking account. Using this account, the Gills: 1) deposited their paychecks, 2) paid family bills, 3) paid off credit card debts, 4) bought personal items, 5) paid expenses improving Katherine's house, and 6) made payments on the $40,000 note.

In July of 1999, Todd filed for divorce. Todd claimed the community was entitled to reimbursement for community funds spent to improve Katherine's house and also to pay down the $40,000 debt. The court found a community claim for $23,500.[1] The court awarded Katherine this claim, but also ordered her to pay the remainder of the debt on the note to Community State Bank.

## DISCUSSION

By her second issue, Katherine contends the evidence is factually insufficient to support the court's $23,500 reimbursement award to the community. Claims for equitable reimbursement for community funds spent to improve a spouse's separate property or to discharge debt on a spouse's separate property are governed by sections 3.401 and 3.402 of the Family Code. Tex.Fam.Code Ann. §§ 3.401, 3.402 (Vernon Supp.2001). They provide:

**§ 3.401. Enhancement in Value Due to Financial Contribution of Community Property**

(a) The enhancement in value during a marriage of separate property owned by a spouse due to a financial contribution made with community property creates an equitable interest of the community estate in the separate property.

(b) The equitable interest created under this section is measured by the net amount of the enhancement in value of the separate property during the marriage due to the financial contribution made with community property.

**§ 3.402. Use of Community Property to Discharge Debt on Separate Property**

(a) The use of community property to discharge all or part of a debt on separate property owned by a spouse during a marriage creates an equitable interest of the community estate in the separate property.

(b) The equitable interest created under Subsection (a) in the enhanced value of separate property due to financial contributions made with community property is computed by multiplying the net enhanced value of the separate property by the sum created by dividing:

(1) the total amount of the payments made by the community estate to reduce the principal of the debt on the separate property; by

(2) the sum of:

(A) the amount computed under Subdivision (1);

(B) the total amount of the payments made by the separate estate to reduce the principal on the debt; and

---

1. Inconsistent with this finding, the court elsewhere valued the community's equitable claim at $20,000.

(C) the total amount of any additional amount spent by the separate estate to acquire the interest in the property.

(c) For purposes of this section, the cost of any improvements made to the separate property paid for by either the separate *or* community estate is included as part of the principal of the debt. *Id.*

■ A claim for equitable reimbursement for community funds spent to improve a spouse's separate property is measured by the "net enhanced value" of the property, *i.e.*, the value of the property on the date of marriage compared to the value of the property on the date of divorce. *See id.* § 3.401 (codifying *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985)); *see also Kimsey v. Kimsey*, 965 S.W.2d 690, 700 (Tex.App.—El Paso 1998, pet. denied). The party claiming the right of reimbursement has the burden of proof on the amount of the reimbursement. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); *Kimsey*, 965 S.W.2d at 700.

■ In reviewing an "insufficient-evidence" point[2] challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *Strahan v. Davis*, 872 S.W.2d 828, 832 (Tex.App.—Waco 1994, writ denied) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965)). Reversal could occur either because the finding is based on weak or insufficient evidence, or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Id.*

■ We note that, absent clear and convincing evidence to the contrary, there is a presumption that the $40,000 debt was a community obligation. *Kimsey*, 965 S.W.2d at 702 (it is well established that debts contracted during marriage are presumed to be community obligations, unless it is shown by clear and convincing evidence that the creditor agreed to look solely to the separate estate of the contracting spouse). There being no evidence that Community State Bank agreed to look solely to Katherine's separate estate for satisfaction of the debt, the $40,000 was, when placed in the bank account, a community asset and the note a community obligation.[3]

■ At trial, Todd claimed he could document that $23,500 of the $40,000 borrowed was spent towards improving the house and paying down the $40,000 note. The record is unclear about how much of the $23,500 went towards principal payments on the note, but the figure appears to be between $2,000 and $5,000. As to the house's "net enhanced value," Todd testified that when the house was given to his wife, they insured it for $65,000, and on divorce, the house was "probably worth 70,000 or so." However, Katherine's real estate appraiser testified that the house at the time of the divorce had a market value between $57,500 and $62,500. The court

---

2. We use the terminology suggested in William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 517–19 (1991); *see also Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied).

3. Section 3.402 speaks in terms of a "debt on separate property." Tex.Fam.Code Ann. § 3.402 (Vernon Supp.2001). We believe this section includes only debts of a spouse that are separate obligations of that spouse's estate secured by that spouse's separate property.

found that on the date of the divorce the house was worth $62,500.[4]

The claim for reimbursement for community funds expended on improvements to Katherine's separate-property house is to be measured by the "net enhanced value" to the house, if any. TEX.FAM.CODE ANN. § 3.401. Very little evidence supports the finding of enhanced value of $23,500. The only evidence of the initial value of the house is the value contained in the insurance policy of $65,000. Assuming for argument's sake that a value included in an insurance policy is evidence of market value, coupling that figure with Todd's testimony that the value of the house at divorce was $70,000, the "net enhanced value" would be $5,000. Using the insurance-policy value and Katherine's appraiser's testimony of value on the date of divorce, the "net enhanced value" was negative $2,500 to $7,500.

With respect to payments made to reduce the principal on the $40,000 note, the evidence shows that community funds were used to pay a community obligation. Section 3.402 is not implicated. *See id.* § 3.402.

Our review convinces us that we should set aside the court's finding of an equitable claim for reimbursement in favor of the community of $23,500. The evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *See Strahan,* 872 S.W.2d at 832. We sustain Katherine's second issue.[5]

## OTHER ISSUES RAISED

Katherine's third and fourth issues are derived from the trial court's error in the

valuation of the community's claim for equitable reimbursement. Because the property division was based on the finding we have reversed, we do not decide the propriety of the division. Also, due to our disposition of the case, we do not reach Katherine's first issue about the trial court's late-filing of findings of fact. Katherine's last issue concerning whether the court should have found that Todd committed adultery was not preserved for appeal, and we will not review it. *See* TEX. R.APP.P. 33.1(a).

## CONCLUSION

The judgment of the trial court is reversed and the cause is remanded for a new hearing on property issues.

---

**4.** Inconsistent with this finding, the court elsewhere determined the market value of the house at $70,000.

**5.** Her second issue arguably includes a "no-evidence" point on this finding. We believe there is some evidence of some reimbursement value.