COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



THOMAS MARK RICHARDSON, §

                 Appellant, §

v. §

JULIE ANA RICHARDSON, §

                 Appellee. §

§

No. 08-12-00076-CV

Appeal from the

205th District Court

of Hudspeth County, Texas

(TC# CV-4130)

## O P I N I O N

This is an appeal from a divorce decree. In two issues, Appellant Thomas Mark Richardson (Thomas), argues that the trial court erred by ordering him to pay the separate debt of Appellee Julie Ana Richardson (Julie) and that legally and factually insufficient evidence supported the trial court's calculation of community reimbursement. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In contemplation of their marriage, Thomas and Julie purchased a Palm Harbor mobile home. The parties were married on November 29, 2002. Prior to marriage, Thomas was engaged in farming in Dell City, Texas; the couple continued those activities during their marriage. Thomas incurred a Farm Service Agency (FSA) loan debt and student loan debt before

the marriage. During the marriage, Julie signed on a note for the renewal of the FSA loan and Thomas made payments towards his FSA loan debt and paid off his student loan debt. Thomas filed for divorce on February 16, 2011. After settling many issues through mediation, a final divorce hearing was conducted on August 3, 2011. Before any testimony was presented, Thomas's counsel informed the trial court that the only issues before it were financial issues concerning the debt of the parties. The trial court signed the divorce decree on November 17, 2011. No findings of fact and conclusions of law were requested.

In the divorce decree, Thomas was awarded the 2003 Palm Harbor mobile home as his sole and separate property, and ordered to pay the balance due on the promissory note given as part of the purchase price on the mobile home. The decree included a paragraph awarding Julie $55,678.98 and $14,079.23 in attorney's fees "[f]or the purpose of a just and right division of property . . . ." Thomas filed a motion for new trial, which was denied. This appeal followed.

## DISCUSSION

Thomas raises two issues on appeal.[1] In Issue One, he argues that the trial court erred by ordering him to pay the entire mortgage debt on the Palm Harbor mobile home. In Issue Two, he challenges the legal and factual sufficiency of the evidence to support Julie's reimbursement award.

*Standard of Review and Applicable Law*

We review most appealable issues in a family law case, such as property division incident to divorce or partition, conservatorship, visitation, and child support, under an abuse of

---

[1] We note that in the section of his brief listing the issues presented on appeal, Thomas includes a third issue which challenges the legal and factual sufficiency of the evidence of the trial court's award of reimbursement. However, in Thomas's brief his Issue Three argument is not set out as a separate issue, but included as a sub-issue under Issue Two. Therefore, for purposes of convenience we consider all of Thomas arguments as being raised in two issues.

discretion standard. *Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex.App. – El Paso 2005, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Id.* at 649; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In reviewing a trial court's division of a marital estate, it is our duty to presume that the trial court properly exercised its discretion. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex.App. – El Paso 2007, no pet.); *Burney v. Burney,* 225 S.W.3d 208, 215 (Tex.App. – El Paso 2006, no pet.). Thus, the party challenging the division bears the burden of demonstrating from the evidence in the record that the trial court's division was so unjust and unfair as to be an abuse of discretion. *Chafino*, 228 S.W.3d at 472-74; *Burney*, 225 S.W.3d at 215.

Under the Texas Family Code, a trial court must divide the estate of the parties in a manner that is just and right having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). Although the division must be equitable, a trial court need not divide community property equally. *Chafino*, 228 S.W.3d at 473; *Chacon v. Chacon*, 222 S.W.3d 909, 915 (Tex.App. – El Paso 2007, no pet.). A trial court is afforded broad discretion in its division of marital property upon divorce. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

We employ a two-pronged test in determining whether the trial court abused its discretion and inquire: (1) did the trial court have sufficient information upon which to exercise discretion, and (2) did the trial court abuse its discretion by making a property division that was manifestly unjust or unfair? *Chafino*, 228 S.W.3d at 472; *Burney*, 225 S.W.3d at 215; *Chacon*, 222 S.W.3d at 915. In making the division, the trial court was authorized to consider a variety of factors, which our jurisprudence commonly refers to as the "*Murff*" factors. *Murff*, 615 S.W.2d at 699;

3

*Garcia*, 170 S.W.3d at 653. Among the variety of "*Murff*" factors that the trial court may consider in dividing the marital estate are: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of earning capacity. *Murff*, 615 S.W.2d at 699. "We defer to the trial court's determination of the credibility of the witnesses' testimony and disturb the trial court's findings only in a case of clear abuse of discretion." *Burney*, 225 S.W.3d at 215; *see Murff*, 615 S.W.2d at 700 (absent an abuse of discretion, the trial court's property division will not be disturbed on appeal).

The legal and factual sufficiency of the evidence are not independent grounds of error, but rather they are factors in our assessment of whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex.App. – Austin 2006, pet. denied); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex.App. – Fort Worth 2004, no pet.). In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The decisive test for legal sufficiency is whether the evidence at trial would allow reasonable and fair-minded people to reach the verdict under review. *Id.* In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

If we find reversible error that materially affects the trial court's "just and right" division of

4

the property, we must remand the entire community estate for a new division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985). As in this case, when the trial court does not make findings of fact and conclusions of law, we must presume the trial court made all the findings necessary to support the judgment. *Chafino*, 228 S.W.3d at 472; *Sprick v. Sprick*, 25 S.W.3d 7, 11 (Tex.App. – El Paso 1999, pet. denied); *see also Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex.App. – Houston [1st Dist.] 2006, pet. denied) (where a trial court does not enter findings of fact or conclusions of law, we must draw every inference supported by the record in favor of the trial court's judgment). If the trial court's implied findings are supported by the evidence, we are required to uphold the judgment on any theory of the law applicable to the case. *Garcia*, 170 S.W.3d at 648.

## THE 2003 PALM HARBOR MORTGAGE DEBT

In Issue One, Thomas contends the trial court erred in ordering him to pay the entire mortgage loan debt on the mobile home awarded to him as his separate property in the divorce decree because a portion of the loan was Julie's separate property debt prior to the marriage. Thomas urges that we reverse the trial court's judgment and remand for a new division of the community estate because the trial court committed reversible error in ordering him to pay this debt. Julie responds that the trial court did not err in characterizing the mobile home and the debt associated with it as community property because Thomas failed to rebut the community property presumption.

### *The Community Property Presumption*

In Texas, property possessed by either spouse during or on dissolution of marriage is presumed to be community property, absent clear and convincing evidence to the contrary. *See*

5

TEX. FAM. CODE ANN. § 3.003 (West 2006); *Warriner v. Warriner*, 394 S.W.3d 240, 247 (Tex.App. – El Paso 2012, no pet.). Clear and convincing evidence is the proof that produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *Viera v. Viera*, 331 S.W.3d 195, 206 (Tex.App. – El Paso 2011, no pet.).

The community property presumption applies to both assets and liabilities. *Viera*, 331 S.W.3d at 204. Therefore, there is a presumption that debt acquired by either spouse during marriage was procured on the basis of community credit. *Sprick*, 25 S.W.3d at 17, *citing Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex.Civ.App. – Houston [1st Dist.] 1981, no writ). An asset purchased on borrowed funds is presumptively community in character, and borrowed funds that are utilized for living expenses should be treated the same. *Sprick*, 25 S.W.3d at 17.

Property owned or claimed by a spouse before marriage or acquired after marriage by gift, devise, or descent is that spouse's separate property. TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001(1)(2) (West 2006). As to separate property, the trial court is without authority to divest a spouse of it. *Burney*, 225 S.W.3d at 219; *see Cameron v. Cameron*, 641 S.W.2d 210, 215-16 (Tex. 1982); *Langston v. Langston*, 82 S.W.3d 686, 688 (Tex.App. – Eastland 2002, no pet.) (trial court may not divest a spouse of separate property and award it to the other spouse). The spouse claiming the property as separate must trace and clearly identify the property claimed as separate property in order to defeat the presumption. *Warriner*, 394 S.W.3d at 247. Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property.

6

*Id*. Generally, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community property presumption. *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex.App. – Fort Worth 2004, no pet.). We resolve any doubt as to the character of property in favor of the community estate. *Id*.

An obligation to pay which arises before marriage should be treated as the incurring spouse's separate debt and cannot be assigned to the non-incurring spouse. *Viera*, 331 S.W.3d at 205. A debt amassed by either spouse during marriage is presumptively a community debt. *Id*. In a divorce proceeding, the parties are responsible for providing the trial court with a basis upon which it may make a division of the estate. *Id*.

*Application*

Here, Thomas asserts that the undisputed evidence at trial shows that the Palm Harbor mortgage debt was incurred by the parties prior to marriage. Specifically, he points to his testimony that the parties purchased the mobile home before they were married, Julie signed the application for the manufacture of home title using her maiden name, and Julie's testimony agreeing that she and Thomas purchased the mobile home in contemplation of getting married and making it their homestead.

At trial, Thomas also presented a copy of the "Application For A Manufactured Home Title" as evidence that the mobile home was the separate property of the parties. We note that the application indicates that the parties were applying for a new home title and includes the following provision:

**BLOCK 5: Joint Tenancy with Right of Survivorship**

Husband and Wife are both shown as buyers or transferees and this shall constitute an agreement for right of survivorship and on the death of either

spouse, title shall pass to the other. (If right of survivorship is desired by joint owners other than husband and wife, an Affidavit of Fact for Right of Survivorship Ownership Agreement is required.[ )]

Directly below this language in the application, the parties checked the box entitled "Yes" which appears to indicate that the parties desired a right of survivorship as described in Block 5. Both Thomas and Julie signed the contract.[2] Julie signed using the last name Navar which is her maiden name.

As further evidence that the mobile home was separate property, Thomas presented the trial court with a copy of the $1,500 check he signed on November 23, 2002, as a down payment on the mobile home as well as a receipt dated November 24, 2002, showing that the payment from Thomas was received by Palm Harbor Homes. The record is devoid of any evidence establishing the origin of the funds used to make the down payment as separate property.

Julie maintains that Thomas's evidence was contradictory and that there was sufficient evidence presented at trial which allowed the trial court to conclude that the mortgage debt was a community liability. We agree. In his pleadings, Thomas did not characterize the mobile home or the debt thereon as being the parties' separate property or debt, nor did he plead a separate property claim. Rather, the record shows that Thomas filed four signed and sworn inventory and appraisement documents with the court and that each document listed the mobile home as community property and the debt associated with it as a community liability. A party's sworn inventory is simply another form of testimony. *See Viera*, 331 S.W.3d at 207.

Although Thomas testified that the mobile home had been purchased by he and Julie prior

---

[2] There is no handwritten date on the application showing when the parties signed it. We further note that the application contains two typed dates. One printed date indicates that the application form was last revised on November 12, 2002 at 9:20 a.m. The second printed date is December 2, 2002, and has a time of 9:42 a.m. next to it. There is no other language describing what the December 2 date references.

8

to the marriage, the application he presented to the trial court contained two different dates and was unclear as to when the mobile home debt was incurred by the parties. On cross-examination, Thomas admitted that the application recited that he and Julie bought the mobile home as husband and wife with joint tenancy with rights of survivorship. Moreover, both Thomas and Julie testified that it was not until after they married that they took delivery of the mobile home and started making payments on it. Julie also testified that she had listed the mobile home as community property in her inventory. At trial, Julie still maintained that the mobile home was community property.

Based on the foregoing contradictory evidence and because Thomas bore the burden of rebutting the community property presumption by clear and convincing evidence, the trial court correctly concluded that Thomas did not produce sufficient evidence to overcome the community presumption and failed to establish by clear and convincing evidence that the liability associated with the mobile home was not community debt. *See* TEX. FAM. CODE ANN. § 3.003 (West 2006). In light of the contradictory evidence, the trial court was not compelled to believe Thomas's testimony concerning the date of purchase as conclusive. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 318 (Tex.App. – Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (the trial court determines the credibility of the witnesses). The trial court was entitled to resolve any conflicts in the evidence. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 797 (1951). Further, as the parties did not request the trial court make findings of fact and conclusions of law, we presume that the trial court made all findings necessary to support the judgment. *Chafino*, 228 S.W.3d at 472; *Sprick*, 25 S.W.3d at 11; *see also Gainous*, 219 S.W.3d at 103. Accordingly, because Thomas failed to rebut the community presumption, we conclude that the trial court did not abuse its

discretion. TEX. FAM. CODE ANN. § 3.003(a); *Sprick*, 25 S.W.3d at 17; *Gainous*, 219 S.W.3d at 103. Issue One is overruled.

**REIMBURSEMENT**

In Issue Two, Thomas challenges the legal and factual sufficiency of the evidence supporting the trial court's award on Julie's claim for reimbursement to the community estate. Thomas maintains that the trial court erred by: (1) miscalculating the amount of community funds used to benefit his separate estate; and (2) erroneously assuming that the reduction of his separate property debt resulted entirely from the application of community property.

Reimbursement is an equitable claim arising when funds or assets from one marital estate are expended to benefit another marital estate without itself receiving some benefit. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). A trial court may also award a money judgment to one spouse against the other to achieve an equitable distribution of the community estate. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998). The party claiming reimbursement bears the burden of establishing that the contribution was made by one marital estate to another, the contribution was reimbursable, and the value of the contribution. *See Vallone*, 644 S.W.2d at 459; *see also In re Marriage of Gill*, 41 S.W.3d 255, 258 (Tex.App. – Waco 2001, no pet.) (party claiming right of reimbursement has burden of proving reimbursement amount).

Reimbursement lies with the trial court's discretion. *Chavez v. Chavez*, 269 S.W.3d 763, 768 (Tex.App. – Dallas 2008, no pet.). A trial court's discretion in evaluating a reimbursement claim is as broad as the discretion exercised by a trial court in making a just and proper division of the community estate. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *Lucy v. Lucy*, 162 S.W.3d 770, 776 (Tex.App. – El Paso 2005, no pet.). A trial court is accorded great latitude in

applying equitable principles to determine reimbursement claims. *Chavez*, 269 S.W.3d at 768;

*Nelson v. Nelson*, 193 S.W.3d 624, 632 (Tex.App. – Eastland 2006, no pet.). On appeal, we

presume the trial court exercised its discretion properly. *Murff*, 615 S.W.2d at 698. We will not

disturb the trial court's discretion unless a clear abuse has been shown. *Bell v. Bell*, 513 S.W.2d

20, 22 (Tex. 1974); *Chavez*, 269 S.W.3d at 768.

First, Thomas argues that there is legally and factually insufficient evidence to support the

trial court's award of a money judgment in favor of Julie as reimbursement to Julie for the use of

community funds used to benefit his separate estate because the trial court miscalculated the

balance of Thomas's separate debt at the time of marriage. Specifically, he contends the trial

court overstated the amount of benefit to his separate estate by at least $11,322.85 because at the

date of marriage, his student loan debt was only $8,000 and the FSA debt was only $71,210.99.

In relevant part, the final divorce decree contains the following paragraphs:

*Judgment and Lien to Equalize Division*

The Court finds that after the date of filing his Petition for Divorce [Thomas] sold community livestock at auction and retained the sale funds in the total sum of $1,527.19. In addition, the Court finds that at the time of the marriage . . . [Thomas] was obligated to pay personal debts totaling approximately $90,533.84.00 to the USDA-FSA Farm Loan Program and student loans, and after the marriage paid from community funds the sum of approximately $84,729.33., thereby reducing his accrued separate debts to the sum of approximately $5,804.51, therefore benefitting [Thomas's] separate estate to the detriment of the community estate in the sum of approximately $84,729.33. The Court further finds that [Thomas], has acquired farm equipment after the date of the marriage, and has retained ownership and placed the farm equipment on his father's property, to the detriment of the community estate, in the sum of $25,101.43.

.    .    .

For the purpose of a just and right division of property made in this DECREE, IT IS FURTHER ORDERED AND DECREED that [Julie], is awarded judgment of $55,678.98 ($1,527.19 + $84,729.33 + $25,101.43 = $111,357.95 ÷ 2 = $55,678.98) . . . .

11

On cross-examination, Thomas agreed that he had three FSA loans in the amounts of $69,823, $47,506.11, and $11,710.39. He testified that he still owed around $5,800 on the FSA loan debt. Based on the forgoing numbers, when asked if he had reduced his separate property debt by $123,239, Thomas agreed with that number. Similarly, Julie testified that there had been a reduction of Thomas's separate property debt in the amount of $123,239 and that the total balance owed on Thomas's FSA loans at the time of trial was $5,800. As further evidence, Julie presented the trial court with a copy of an annual statement on the FSA loan reflecting that the unpaid principal on his FSA debt was $5,804.51.

As to his student loan debt, Thomas testified that he acquired that debt prior to the marriage and that he believed it was under $9,000 and barely over $8,000. Thomas testified that his student loan debt was paid off during the marriage with community funds. Julie also testified that the amount of Thomas's student loan debt when they got together was $9,000 and below. No documentation was provided to the trial court in regard to Thomas's student loan debt.

The record contains some evidence to support the trial court's reimbursement calculation which includes in part, Thomas's FSA loan debt and student loan debt. At most, Thomas points to conflicting evidence. However, the fact finder was the sole judge of the credibility of the witnesses and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819; *Cain*, 709 S.W.2d at 176; *Zagorski*, 116 S.W.3d at 317-18 (stating credibility of husband and wife in divorce action falls strictly within purview of the trial court). The trial court could have reasonably chosen to believe Julie's testimony and disregard Thomas's testimony. Further, because the trial court did not make any separate findings of fact or conclusions of law, we must presume that the trial court made all the necessary findings to support its judgment. *Chafino*, 228

12

S.W.3d at 472; *Sprick*, 25 S.W.3d at 11; *see also Gainous*, 219 S.W.3d at 103; *Boyd*, 131 S.W.3d at 611.

Next, Thomas asserts that the evidence was legally and factually insufficient to support the trial court's calculation because it was based on the assumption that the entire reduction of his separate property debt resulted from the application of community funds. Particularly, Thomas contends that the undisputed evidence showed that a $39,000 reduction in his FSA loan debt was traced to the sale of the sheep he purchased prior to the marriage.

Generally, income produced from separate property is considered community property, regardless of the nature of the separate property generating income, including stock, shares in a corporation, livestock, or other assets. *See Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799, 803 (1925); *Alsenz v. Alsenz*, 101 S.W.3d 648, 653 (Tex.App. – Houston [1st Dist.] 2003, pet. denied); *In re Marriage of Louis*, 911 S.W.2d 495, 497 (Tex.App. – Texarkana 1995, no writ); *see also McElwee v. McElwee*, 911 S.W.2d 182, 188-89 (Tex.App. – Houston [1st Dist.] 1995, writ denied) (profits gained from separate property are community property).

The evidence at trial establishes that Thomas purchased the sheep before the parties' marriage. On direct examination, Thomas testified he went into the sheep business in 2001 prior to the marriage. He further testified that the money from the sale of the sheep was used to pay the FSA loan debt. Julie testified that her separate property was used to pay for feed, tractors, and the FSA loan debt. She also stated that "[a]s far as the FSA loan is concerned, we paid it all while we were working the sheep." She explained that after she had her son, she stayed at the farm and worked the sheep. After they sold the sheep, all of the money that was earned after Julie had worked the sheep went to pay for the debt that was incurred prior to the marriage. Based on this

13

evidence, the trial court properly determined that income from the sale of the sheep during the marriage was property of the community estate, that community income was used to pay Thomas's FSA loan debt and his separate property estate was benefitted by that income. *See Alsenz*, 101 S.W.3d at 653; *McElwee*, 911 S.W.2d at 188-89.

On the record before us, we conclude the evidence was legally and factually sufficient, and in light of the great latitude afforded to the trial court in determining reimbursement claims, we conclude that the trial court did not abuse its broad discretion in awarding reimbursement to Julie, as part of its just and right division of the community estate. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Boyd*, 131 S.W.3d at 611; *Penick*, 783 S.W.2d at 198. Issue Two is overruled.

## CONCLUSION

We affirm the judgment of the trial court.


                                        GUADALUPE RIVERA, Justice

February 5, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

14