

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-16-00310-CV |
| | § | |
| THOMAS MARK RICHARDSON, | § | AN ORIGINAL PROCEEDING IN |
| | § | |
| RELATOR | | HABEAS CORPUS |
| | § | |
| | § | |

**O P I N I O N**

Thomas Mark Richardson (Thomas) has filed a habeas corpus petition challenging a contempt order issued by the Honorable Francisco X. Dominguez, Judge of the 205th District Court of Hudspeth County, Texas. Pending review, this Court issued an order setting bond. Finding that the contempt order is supported by a valid finding of contempt, we deny the petition for writ of habeas corpus, order his bond revoked, and remand him to the custody of the Hudspeth County Sheriff.

**FACTUAL SUMMARY**

The Court is familiar with some of the facts giving rise to the current dispute because we heard Thomas's appeal from the divorce decree. *See Richardson v. Richardson*, 424 S.W.3d 691 (Tex.App.--El Paso 2014, no pet.).[1] Thomas and Julie purchased a Palm Harbor mobile home

---

[1] The factual summary is based on the mandamus record and the facts set forth in *Richardson v. Richardson* (where indicated).

shortly before they married on November 29, 2002. *Richardson*, 424 S.W.3d at 695. Thomas had two significant debts which he incurred prior to marriage: a Farm Service Agency (FSA) loan debt and student loan debt. *Id.* The evidence showed that community funds were used to pay off the student loan debt and the FSA loan was significantly reduced. *Id.* Thomas filed for divorce on February 16, 2011. *Id.* The parties resolved certain issues through a mediated settlement agreement, and at the final hearing, the only issues remaining to be resolved pertained to the debt of the parties. *Id.* More specifically, Thomas contended that the debt related to the purchase of the Palm Harbor mobile home was a community debt, and Julie sought reimbursement of the community funds expended to reduce Thomas's separate property debts (the FSA loan and his student loan). *Id.*

In the *nunc pro tunc* divorce decree, signed on February 2, 2012, the court awarded Thomas the 2003 Palm Harbor mobile home as his sole and separate property, and ordered him to pay the balance due on the promissory note.[2] The trial court ordered Thomas to maintain a life insurance policy through his employer, Dell Telephone Cooperative, in the amount of $350,000 with Julie as the beneficiary, until the last child reaches the age of 18.

The court also found in favor of Julie on her reimbursement claim based on the following findings: (1) community funds were used to reduce Thomas's separate property debts by $84,729.33; (2) Thomas sold community livestock at auction and retained the sale proceeds in the amount of $1,527.19; (3) Thomas acquired farm equipment using community funds, but he placed the equipment on his father's property to the detriment of the community estate in the sum of $25,101.43. For purposes of making a just and right division of property, the court awarded judgment to Julie in the amount of $55,678.98 ($1,527.19 + $84,729.33 + 25,101.43 = $111,357.95

---

[2] The decree was rendered on November 17, 2011.

divided by 2 = $55,678.98).  Further, the court awarded Julie attorney's fees in the sum of $14,079.23, finding that she incurred them in connection with conservatorship and support of the children.  The judgment also ordered Thomas to sign a note for $69,758.21 ($55,678.98 + $14,079.23 = $69,758.21) payable to Julie with 6 percent interest per annum amortized for ten years.

Thomas appealed, raising two issues:  (1) the trial court erred by ordering him to pay the entire mortgage debt on the Palm Harbor mobile home; and (2) the evidence was legally and factually insufficient to support the reimbursement award to Julie.  *Richardson*, 424 S.W.3d at 695.  The Court rejected these arguments and affirmed the judgment of the trial court.  *Richardson*, 424 S.W.3d at 697-702.

In August 2014, Julie filed a motion to enforce alleging numerous violations of the decree, including refusal to pay her a share of sale proceeds from the sale of community property, failure to turn over property awarded to her, and refusal to designate her as the primary beneficiary of a life insurance policy.  The motion also alleged that Thomas had failed to pay the judgment in the amount of $55,678.98.  Following a hearing held on August 28, 2015, the trial court held Thomas in contempt for nine separate violations of the divorce decree, including failure to make payments on the judgment awarded to Julie, failure to sign a promissory note to Julie, failure to make any payments on that unsigned promissory note, failure to turn over receipts and other documents confirming the sale of livestock, failure to pay attorney's fees, failure to turn over a handgun, failure to turn over a hard drive containing family photos, failure to turn over 50 percent of a retirement account, failure to maintain a life insurance policy in the amount of $350,000 with Julie as the beneficiary, and failure to pay an additional award of attorney's fees.  The court held Thomas in civil contempt, and ordered him confined in the El Paso County Jail for 18 months or until he

purged the findings of contempt by: (1) paying to Julie the sum of $774.46 on the third day of each month beginning September 3, 2015, and continuing until the judgment in the amount of $69,751.21 including accrued interest is paid; (2) delivering to Julie copies of all sale receipts confirming the sale of livestock; (3) paying to Julie attorney's fees in the amount of $14,079.23 for attorney's fees rendered in connection with conservatorship and support of the children; (4) delivering to Julie the .9mm handgun awarded to her in the divorce decree; (5) delivering to Julie fifty percent of Thomas's savings in the NTCA Savings Plan arising out of his employment with Dell Telephone Cooperative, Inc.; (6) naming Julie as the primary beneficiary for the benefit of the children on Thomas's life insurance policy and provide Julie with written proof from Dell Telephone Cooperative, or the life insurance company, confirming life insurance coverage of not less than $350,000 within thirty days from the date of the order and thereafter annually on the anniversary date of the divorce decree; and (7) paying the sum of $3,000 to Julie for attorney's fees.

The trial court suspended the commitment and placed Thomas on unsupervised community supervision for ten years so long as Thomas complied with each of the following terms and conditions: (1) timely pay the sum of $774.46 on the third day of each month beginning September 3, 2015 and continuing thereafter until the judgment and accrued interest is paid in full; (2) pay to Julie, as part of the judgment and promissory note, the sum of $14,079.23 for attorney's fees rendered in connection with conservatorship and support of the children; (3) deliver to Julie fifty percent of the NTCA Savings Plan within thirty days from the date of the order; (4) name Julie as primary beneficiary for the benefit of the children on Thomas's life insurance policy in an amount not less than $350,000, and provide Julie with written proof from Thomas's employer or the insurance company confirming the life insurance coverage within thirty days from the date of

- 4 -

the order; (5) pay the sum of $3,000 for attorney's fees to Julie within thirty days from the date of the order; and (6) pay to Myer J. Lipson attorney's fees in the amount of $9,296.68 within thirty days from the date of the order.

On March 17, 2016, Julie filed a motion to revoke the suspension of the contempt order alleging that Thomas: (1) failed to make the monthly payments on the judgment/promissory note; (2) failed to name her beneficiary on the life insurance policy in the sum of $350,000; (3) failed to pay her attorney's fees in the amount of $3,000; (4) and failed to pay attorney's fees in the amount of $9,296.68 to Julie's attorney, Myer Lipson. Thomas responded by filing a Chapter 13 bankruptcy petition and listing the debts owed to Julie and her attorney as non-priority, dischargeable debts. Consequently, Julie filed a motion asking the trial court to find that the judgment and attorney's fees owed by Thomas under the divorce decree were in the nature of a domestic support obligation under the Bankruptcy Code's definition. The trial court granted that motion, finding that the sums Thomas was ordered to pay were in the nature of a domestic support obligation. Thomas subsequently dismissed his bankruptcy proceeding.

The trial court conducted the contempt hearing on October 20, 2016, and granted the motion to revoke community supervision, finding that Thomas had failed to comply with the order suspending the commitment signed on October 27, 2015. More specifically, the court found that Thomas: (1) failed to timely pay $774.46 on the third day of each month beginning on September 3, 2015; (2) as part of the monthly payments on the judgment, Thomas failed to pay to Julie the sum of $14,079.23 for attorney's fees rendered in connection with conservatorship and support of the children; (3) failed to name Julie as primary beneficiary of the life insurance policy; (4) failed to pay to Julie attorney's fees in the amount of $3,000; and (5) failed to pay attorney's fees in the amount of $9,296.68 to Myer J. Lipson. The trial court ordered Thomas committed to

the custody of the Hudspeth County Sheriff until Thomas has: (1) paid the sum of $10,842.44 which is the total of the monthly payments on the judgment from September 3, 2015 to October 3, 2016; (2) paid to Julie the sum of $14,079.23 for attorney's fees incurred in connection with conservatorship and child support; (3) provided written proof from Dell Telephone Cooperative or the life insurance company confirming that Julie has been named as primary beneficiary of the life insurance policy in the amount of $350,000; (4) paid the sum of $3,000 to Julie for attorney's fees; and (5) paid to Myer J. Lipson the sum of $9,296.68 for attorney's fees.

On November 4, 2016, Thomas filed a motion to clarify the order revoking suspension and committing him to jail. The trial court signed an amended order on November 18, 2016. In that order, the trial court stated the following:

FINDINGS OF CONTEMPT

The Court finds that THOMAS MARK RICHARDSON failed to comply with the following terms of this Court's orders:

1. Pay the sum of $774.46 on the third day of each month, beginning September 3, 2015, and continuing regularly thereafter on the third day of each month until August 3, 2021, when the entire amount of the Judgment and Promissory Note in the amount of $69,751.21, including accrued, unpaid interest, be payable in full, and at that time, pay the full balance due on the Judgment.

2. Pay to JULIE ANNA [sic] RICHARDSON, as part of the Judgment and Promissory Note the sum of $14,079.23 for attorney's fees, expenses, and costs for services rendered in connection with conservatorship and support of the children for and on behalf of JULIE ANA RICHARDSON.

3. Name JULIE ANA RICHARDSON as primary beneficiary for the benefit of the children on THOMAS MARK RICHARDSON's life insurance policy in an amount not less than $350,000.00 on or before August 28, 2015, and provide to JULIE ANA RICHARDSON written proof from Dell Telephone Cooperative, Inc. or the life insurance company, confirming the life insurance coverage on Respondent in an amount not less than $350,000.00.

4. Pay by cash, cashier's check, or money order the sum of $3,000.00 for attorney's fees, expenses, and costs to JULIE ANA RICHARDSON.

5.  Pay by cash, cashier's check, or money order, as attorney's fees, expenses, and costs in the sum of $9,296.68 to Myer J. Lipson at Lipson & Dallas, P.C., 1444 Montana Ave., Suite 200, El Paso, TX 79902.

The amended order provided that Thomas would remain in jail until he had purged the contempt by doing the following:  (1) paying to Julie the sum of $11,616.90 (total of the monthly payments of $774.46 for the period beginning September 3, 2015, and continuing through November 3, 2016); (2) paying to Julie the sum of $14,079.23 for attorney's fees; (3) providing written proof from Dell Telephone Cooperative, or the life insurance company, confirming that Julie has been named as primary beneficiary for the benefit of the children on Thomas's life insurance policy in the amount of $350,000.00, or in the event Thomas's employment with Dell Telephone Cooperative, Inc. has been terminated, proof from Dell Telephone Cooperative, Inc. that Thomas's employment has been terminated; (4) paying to Julie the sum of $3,000.00; and (5) paying to Julie's attorney, Myer Lipson, the sum of $9,296.68.

## IMPRISONMENT FOR A DEBT

Thomas raises multiple issues asserting that the contempt order and commitment order are void because he has been confined for failure to pay a debt in violation of Article I, Section 18 of the Texas Constitution.  Related issues will be considered together and not necessarily in the order in which they are presented in Thomas's petition.

### *Applicable Law*

A commitment order is subject to collateral attack in a habeas corpus proceeding.  *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980).  A writ of habeas corpus will issue if the trial court's contempt order is void, either because it is beyond the court's power or because the relator has not been afforded due process.  *In re Henry*, 154 S.W.3d at 596.  A commitment order that violates the Texas Constitution is beyond the court's

power and is void. *In re Henry*, 154 S.W.3d at 596; *see Ex parte Yates*, 387 S.W.2d 377, 380 (Tex. 1965). Article I, Section 18 of the Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." TEX.CONST. art. I, § 18. An order requiring payment of debt may be enforced through legal processes like execution or attachment, but a confinement order premised on failure to pay a debt is void. *Id.*; *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993).

Thomas argues that the contempt and commitment orders violate Section 9.012 of the Texas Family Code which prohibits the use of contempt to enforce a divorce decree's award of a sum of money payable in a lump sum or in future installment payments in the nature of a debt. Section 9.012 provides:

> (a) The court may enforce by contempt an order requiring delivery of specific property or an award of a right to future property.

> (b) The court may not enforce by contempt an award in a decree of divorce or annulment of a sum of money payable in a lump sum or in future installment payments in the nature of debt, except for:

> (1) a sum of money in existence at the time the decree was rendered; or

> (2) a matured right to future payments as provided by Section 9.011.

> (c) This subchapter does not detract from or limit the general power of a court to enforce an order of the court by appropriate means.

TEX.FAM.CODE ANN. § 9.012 (West 2006).

*The Reimbursement Award*

In Issues One through Five, Thomas challenges the contempt orders based on his non-payment of the reimbursement award in the amount $55,678.98 and attorney's fees in the amount of $14,079.23, and the related money judgment. He contends that the commitment order, based on his failure to pay these amounts is void because it has resulted in his confinement for a debt. We agree. The divorce decree included a money judgment for the reimbursement award in the

amount of $55,678.99. This judgment is a debt, and it cannot be enforced by contempt. *See Ex parte Hall*, 854 S.W.2d at 658; *Ex parte Yates*, 387 S.W.2d at 380. Consequently, this part of the commitment order is void. To this extent, Issues One through Five are sustained.

*Attorney's Fees Awarded in Divorce Decree*

In Issues One through Four, and Nine, Thomas also challenges the finding of contempt based on his non-payment of the attorney's fee award of $14,079.23 to Julie as required by the divorce decree. Thomas makes additional arguments regarding this award of attorney's fees in Issues Eleven, Twelve, Sixteen, and Twenty.

As a general rule, attorney's fees are considered a debt and a person cannot be imprisoned for failure to pay such fees. *See* TEX.CONST. art. I, § 18; *Wallace v. Briggs*, 162 Tex. 485, 348 S.W.2d 523, 525-26 (1961). The Texas Family Code permits a trial court to order reasonable attorney's fees as costs, and the fees may be enforced by any means available for the enforcement of a judgment for debt. TEX.FAM.CODE ANN. § 106.002 (West 2014). Under the Family Code, not all attorney's fees are treated as a debt. Section 157.167 provides that if the court finds the respondent has failed to make child support payments, the trial court "shall order the respondent to pay the movant's reasonable attorney's fees" and such fees "may be enforced by any means available for the enforcement of child support, including contempt." TEX.FAM.CODE ANN. § 157.167 (West 2014). As a result, attorney's fees are permissibly taxed as child support when incurred during child support enforcement proceedings. *See In re Moers*, 104 S.W.3d 609, 611 (Tex.App.--Houston [1st Dist.] 2003, orig. proceeding); *see Ex parte Wessell*, 807 S.W.2d 17, 20 (Tex.App.--Houston [14th Dist.] 1991, orig. proceeding); *Tamez v. Tamez*, 822 S.W.2d 688, 691 (Tex.App.--Corpus Christi 1991, writ denied). A trial court is not authorized to award attorney's fees incurred by a party in a non-enforcement modification suit affecting the parent-child

relationship as additional child support. *Tucker v. Thomas*, 419 S.W.3d 292, 298-300 (Tex. 2013).

The divorce decree contains the following paragraph:

The Court finds that RESPONDENT, JULIE ANA RICHARDSON, has incurred in excess of $14,079.23 as attorney's fees, expenses, and costs for services rendered in connection with conservatorship and support of the children, and to prosecute and defend this action. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, judgment should be awarded for attorney's fees to JULIE ANA RICHARDSON. IT IS ORDERED that good cause exists to award JULIE ANA RICHARDSON a judgment in the amount of $14,079.23 for attorney's fees, expenses, and costs, to be also incorporated into a Note, as described above, to equalize the division of the community property of the parties. The judgment shall be collectable separately and independently from the Note, with interest and terms as described above shall be collectible. JULIE ANA RICHARDSON may enforce this Judgment and/or the Note in her own name by any means available for the enforcement of the Note and/or judgment for debt.

This award of attorney's fees does not fall within the reach of Section 157.167 because it was made in the context of the divorce action, and the trial court did not find that Thomas had failed to make child support payments. In other words, the award was not made in a child support enforcement action. *See In re Moers*, 104 S.W.3d at 611. Consequently, it is a debt and is not enforceable by a contempt action. *See Roosth v. Daggett*, 869 S.W.2d 634, 637 (Tex.App.--Houston [14th Dist.] 1994, orig. proceeding). Issues One through Four and Nine are sustained. Due to the resolution of these issues, it is unnecessary to address Issues Eleven, Twelve, Sixteen, and Twenty.

*Attorney's Fees Related to the Enforcement Actions*

In Issue Seventeen, Thomas contends that the portions of the contempt order finding him in contempt for failure to pay attorney's fees in the amounts of $9,296.68 and $3,000 are void because his obligation to pay these fees is a debt which cannot be enforced by contempt. We agree. These awards were made in connection with proceedings to enforce the divorce decree, and were not made in connection with a child support enforcement proceeding pursuant to Section

- 10 -

157.167 of the Family Code. Consequently, they are debts and are not enforceable by contempt. Issue Seventeen are sustained. Due to the disposition of Issue Seventeen, it is unnecessary to address Issues Six and Seven.

## LIFE INSURANCE POLICY

In Issues Thirteen through Fifteen, Thomas challenges the contempt order based on his failure to name Julie as primary beneficiary of the life insurance policy for the benefit of the children and to provide proof of same. In Issue Thirteen, Thomas contends that the contempt finding is not based on a clear, specific, and unambiguous order. More specifically, Thomas argues that the divorce decree, October 27, 2015 order, and the November 18, 2016 order are inconsistent.

The *nunc pro tunc* divorce decree contains the following provisions:

> The Court finds that THOMAS MARK RICHARDSON has, through his employment with Dell Telephone Cooperative, Inc., a Pre-Retirement Death Benefit life insurance policy in the amount of $350,000.00. IT IS ORDERED that THOMAS MARK RICHARDSON shall, as long as insurance is available to him, maintain in full force and effect at THOMAS MARK RICHARDSON's sole cost and expense the same life insurance policy, or a like insurance policy, insuring the life of THOMAS MARK RICHARDSON, in an amount not less than $350,000.00 and naming JULIE ANA RICHARDSON as Trustee-beneficiary in Trust for the benefit of the minor children, until the last minor child reaches eighteen (18) years of age. Upon the last minor child reaching eighteen (18) years of age, this ORDER will expire and THOMAS MARK RICHARDSON may designate the same or different beneficiaries of the life insurance policy. THOMAS MARK RICHARDSON is ORDERED to furnish JULIE ANA RICHARDSON written proof from his employer or the life insurance company confirming the coverage required under this DECREE no later than 30 days after the date this DECREE is signed by the Court and thereafter annually on the anniversary date of the divorce.

After setting forth the above provision related to the life insurance policy, the trial court found, in the October 27, 2015 contempt and suspension of commitment order, that Thomas failed to comply with and had violated the above provisions. More specifically, the October 27, 2015 order stated:

> Respondent failed to comply with the Order by failing to maintain in full force and

- 11 -

effect at THOMAS MARK RICHARDSON's sole cost and expense the life insurance policy in an amount not less than $350,000.00, and naming JULIE ANA RICHARDSON as primary beneficiary for the benefit of the children. Further, THOMAS MARK RICHARDSON failed to furnish JULIE ANA RICHARDSON written proof from his employer or the life insurance company confirming the coverage required under the Nunc Pro Tunc Decree of Divorce Order no later than thirty (30) days after the date the decree was signed by the Court and thereafter annually on the anniversary date of the divorce.

In the October 20, 2016 order revoking suspension, the trial court concluded that Thomas failed to comply with the above term as follows:

Respondent, THOMAS MARK RICHARDSON has failed to name JULIE ANA RICHARDSON as primary beneficiary for the benefit of the children on THOMAS MARK RICHARDSON's life insurance policy in an amount not less than $350,000.00. Respondent has failed to furnish to JULIE ANA RICHARDSON written proof from Dell Telephone Cooperative, Inc. or the life insurance company confirming the life insurance coverage of Respondent in an amount not less than $350,000.00 within 30 days from the date of this Order, and thereafter, annually on the anniversary date of the Decree of Divorce.

A comparison of the divorce decree, the October 27, 2015 contempt order, and the October 20, 2016 contempt order shows that the provisions are consistent and unambiguous. Issue Thirteen is overruled.

In Issue Fourteen, Thomas contends that the requirement that he name Julie as the beneficiary of the life insurance policy and provide proof of same is not enforceable by contempt because there is no provision in the Family Code imposing a duty on a parent to maintain life insurance for the benefit of the children. As a general rule, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period and until he complies with the order. *See Ex parte Hall*, 854 S.W.2d at 658; TEX.GOV'T CODE ANN. § 21.002 (West 2004). The Family Code provides that a child support obligation does not terminate on the death of the obligee but continues as an obligation to the child named in the support order. TEX.FAM.CODE ANN. § 154.013(a)(West Supp. 2016). Further, Section 154.016, entitled

"Provision of Support in Event of Death of Parent," provides that the "court may order a child support obligor to obtain and maintain a life insurance policy, including a decreasing term life insurance policy, that will establish an insurance-funded trust or an annuity payable to the obligee for the benefit of the child that will satisfy the support obligation under the child support order in the event of the obligor's death." TEX.FAM.CODE ANN. §154.016(a)(West Supp. 2016). The purpose of maintaining a term life insurance policy is to ensure that a child support obligation is met after the obligor's death. The trial court had authority to order Thomas to maintain a life insurance policy for the children's benefit for so long as his child support obligation remained in effect. *See Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex.App.-- Houston [1st Dist.] 2007, no pet.); *Niskar v. Niskar*, 136 S.W.3d 749, 759 (Tex.App.--Dallas 2004, no pet.); *Grayson v. Grayson*, 103 S.W.3d 559, 563 (Tex.App.--San Antonio 2003, no pet.). Consequently, the court also had authority to hold Thomas in contempt for failing to comply with the court's order. Issue Fourteen is overruled.

In Issue Fifteen, Thomas asserts that the contempt order is void because the trial court held him in contempt for failing to provide proof that his employment with Dell Telephone Cooperative has been terminated. This argument confuses the finding of contempt with the trial court's order specifying how Thomas could purge the contempt and secure his release from jail. In the November 18, 2016 amended order revoking suspension, the trial court found that Thomas failed to name Julie as the primary beneficiary of the life insurance policy and had failed to provide written proof from Thomas's employer or the insurance company that she had been named primary beneficiary of the life insurance policy. The decree of divorce stated that Thomas had through his employment with Dell Telephone Cooperative a Pre-Retirement Death Benefit life insurance policy in the amount of $350,000, and the decree required him to maintain the policy "as long as

insurance is available to him." The trial court permitted Thomas to purge the contempt by providing written proof from Thomas's employer or the insurance company that Julie had been named the primary beneficiary for the benefit of the child on the life insurance policy. By the time the trial court entered the amended order, Thomas had been in jail for almost a month. The order additionally provided that in the event Thomas's employment was terminated, Thomas could purge the contempt by providing proof from Dell Telephone Cooperative that his employment had in fact been terminated. Thus, the trial court did not find Thomas in contempt for not providing proof his employment had been terminated. The amended order simply provides Thomas with an additional means of purging the contempt and securing his release from jail.[3] Issue Fifteen is overruled.

## MULTIPLE CONTEMPT VIOLATIONS -- ONE COERCIVE PUNISHMENT

In Issues Eight and Twenty-one, Thomas argues that because the trial court assessed a single punishment of eighteen months in jail for multiple acts of contempt where at least one of the acts is not punishable by contempt. He cites *In re Henry*, 154 S.W.3d 594 (Tex. 2005) in support of his argument.

In *Henry*, the final divorce decree ordered the relator to pay weekly child support, certain debts, and the 1995 and 1996 real estate taxes due on the marital residence. The relator failed to comply with the decree and the court held him in contempt for failure to pay past-due real estate taxes and for 359 separate acts of contempt for failure to pay child support. *Henry*, 154 S.W.3d at 595-96. The trial court imposed a criminal contempt sentence of confinement in the county jail for 72 hours and a civil contempt sentence requiring that the relator remain confined until he paid

---

[3] Thomas asserts in his brief that his employment has been terminated due to his incarceration, and he can no longer obtain a life insurance policy through his employment. He also claims that he has attached to his affidavit a copy of a document from Dell Telephone Cooperative showing that his employment has been terminated following his incarceration, but no document is attached to the affidavit.

his ex-wife $30,141.42, which included $20,873 in past-due child support, $2,268 in interest, $4,640.42 in past-due property taxes, and $2,360 in attorney's fees. *Henry*, 154 S.W.3d at 596. The Supreme Court determined that the relator's obligation to pay property taxes as ordered in the divorce decree was not enforceable by confinement for contempt because it was a debt. *Id.* at 597. Further, it held that the entire commitment order was void because it assessed one coercive punishment for all acts of civil contempt, including the act which was not punishable by contempt. *Id.*

Thomas misconstrues the holding of *Henry*. The Supreme Court did not hold that it was error to impose a single punishment of 72 hours in jail for multiple acts of contempt. It held that the commitment order was because it assessed one coercive punishment, i.e., payment of $30,141.42. *Henry*, 154 S.W.3d at 598. The instant case is distinguishable because the commitment order does not impose a single coercive punishment for all of the acts of contempt. To the contrary, the order specifies the performance of acts directly related to the contempt findings. Issues Eight and Twenty-one are overruled.

### OCTOBER 20, 2016 COMMITMENT ORDER

In Issue Ten, Thomas argues that the October 20, 2016 commitment order is ambiguous and unenforceable because several of the acts of contempt are crossed out and marked with the notation "TO BE CLARIFIED BY COURT." In this order, the trial court quotes at length from the October 27, 2015 contempt order, including portions of the section labeled "*Civil Contempt*" which set forth the actions Thomas was required to perform. The trial court crossed out paragraphs 1, 3, 5, and 10 and indicated that he was going to clarify these requirements. The only paragraph left remaining is Paragraph 9 which relates to Thomas's failure to name Julie as the beneficiary of the life insurance policy. On November 4, 2016, Thomas filed a motion to clarify the order

revoking suspension and committing him to jail, and following a hearing, the trial court signed an amended order on November 18, 2016. That order set forth five findings of contempt and specified the actions required by Thomas in order to purge the contempt. Thomas complains that he cannot be confined pursuant to the October 20, 2016 commitment order, but that order was replaced by the November 18, 2016 order. Further, the Court has already held that the portions of contempt orders related to the reimbursement award and attorney's fees are void. The portion of the contempt orders related to the life insurance policy is not impacted by this issue. Issue Ten is overruled.

## NON-ATTENDANCE OF CLARIFICATION HEARING

In his eighteenth issue, Thomas argues that the November 18, 2016 order is void because the court did not permit him to attend the hearing. The court conducted a hearing on Thomas's motion to clarify the order, but Thomas was not taken from the jail to the courtroom for the hearing. Thomas asserts that the trial court did not merely clarify the prior order, but made substantive changes to it. The Court has determined that the only valid contempt finding pertains to Thomas's failure to name Julie a beneficiary of the life insurance policy. Thomas argues that the new contempt order required him to provide proof from Dell Telephone Cooperative that his employment had been terminated, and if he had been at the hearing, he could have offered proof that his employment has been terminated. The contempt order allows Thomas to purge the contempt by providing proof that his employment has been terminated, but he has not complied. The trial court has discretion to specify the proof the court finds acceptable to establish compliance with the court's order. Thomas has not shown that the contempt is void. Issue Eighteen is overruled.

## AMENDMENT OF CONTEMPT ORDER

- 16 -

In Issue Nineteen, Thomas contends that the November 18, 2016 contempt order is void because a court lacks authority to amend a contempt order after it has been entered. The record reflects that the trial court clarified the contempt order on Thomas's motion. Under the invited error doctrine, a party is estopped from challenging a trial court's ruling if the complaining party actually requested the specific action that the trial court took. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861–62 (Tex. 2005); *In Interest of S.T.*, 507 S.W.3d 482, 485 (Tex.App.--Fort Worth 2015, no pet.). Even if Thomas did not invite the error of which he complains, the Court has already determined that the November 18, 2016 contempt order is void except for the portions related to the life insurance issue. Consequently, it is unnecessary to address any amendment related to those provisions.

The only remaining valid contempt finding is related to the life insurance policy. An order of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976). Thomas argued in the trial court that he could not comply with the divorce decree's requirement that he provide life insurance through his employment because he had lost his job after being jailed for contempt. A trial court has discretion to designate the means by which the party adjudged to be in contempt is allowed to purge himself of the contempt. *Stephens v. Stephens*, 543 S.W.2d 686, 688 (Tex.Civ.App.--Houston [1st Dist.] 1976, no writ). The trial court did not abuse its discretion by requiring Thomas to provide credible proof that he had been terminated from employment in order to purge the contempt and secure his release from jail. Issue Nineteen is overruled.

We have determined that several of the contempt findings are void, but the finding of contempt related to the life insurance policy is valid, and based on the record before us, it does not appear that Relator has purged himself of contempt. Accordingly, we deny the petition for writ of

habeas corpus, order his bond revoked, and remand him to the custody of the Hudspeth County Sheriff.

May 26, 2017

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.